The plaintiff, Era B. Long, has filed this suit under the workmen's compensation statute, Act No. 20 of 1914, as amended, against the defendant, Continental Oil Company, in which he is claiming total and permanent disability as the result of an accident which he alleged occurred on April 27th, 1947, Plaintiff further alleged that on the day of the accident, while working within the scope of his employment as an employee of the defendant at its plant in Calcasieu Parish, Louisiana, that he was required to clean various oil pumps and that upon the completion of this duty, when plaintiff raised from a stooping position he struck his head suddenly and violently on a valve stem, causing laceration of his head, concussion, injuries to the muscles, nerves, ligaments and vertebrae of his back, and severe shock to his nervous system, "each and all of which has resulted in petitioner being totally and permanently disabled." Plaintiff alleged that in addition to the specific injuries mentioned that he has continuously suffered from pain in the region of his back; that the pain together with his injury has disabled him from performing work of any reasonable character.
Plaintiff's primary contention was that the injuries received by him on or about the 27th day of April, 1947 were the sole and only cause of the resulting disability; however, in the alternative, plaintiff alleged that should the Court conclude that the injuries which plaintiff received on the date alleged are not the sole cause of his present disability that "said injuries aggravated and made worse a latent physical condition or disease from which your petitioner was suffering at the time he was injured as aforesaid."
The defendants admitted that the plaintiff, during the course of his employment on April 27, 1947, bumped and cut his head slightly but deny that plaintiff suffered any injury other than a slight cut about an inch long on the top of his head, and defendants further urge that plaintiff lost no time as the result of this accident and sustained no disability as a result thereof. "It is the contention of the defendants that plaintiff is suffering from a congenital condition, — a grade-1 spondylolisthesis — a condition which allows the vertebra in the spinal column to slip back and forth on one another, and that any disability the plaintiff had was caused by an accident which he sustained in 1943, and as to the 1943 accident, prescription of one and two years was pleaded."
"Defendants contended that long prior to the April 27, 1947, accident, plaintiff's physical condition was so bad that he had agreed to undergo a very dangerous operation on his spine to fuse the offending vertebra, and that prior to April 27, 1947, the plaintiff was so disabled by the 1943 accident that the management of the employer corporation decided to retire him."
The case was duly tried and the District Court rendered judgment in favor of the plaintiff as prayed for. Motion for new trial was duly filed, argued, submitted, and overruled by the Court. The defendant has, therefore, prosecuted this appeal.
The evidence in this case shows that the plaintiff, during the year 1939, was employed by the Empire Paper Company of Wichita Falls, Texas, in its print shop; that he suffered an accident as shown by photostatic copy of notice of injury filed with the Industrial Accident Board of Austin, Texas, and claim for compensation for injury filed by the plaintiff, in which plaintiff stated that he injured his right shoulder, back and neck in that the muscles were pulled loose in same.
Plaintiff was first employed by the defendant during the year 1942 and at that time was doing hard manual labor as a pumper's helper. He did not take any pre-employment physical examination.
The testimony reveals that the first examination of plaintiff's back in 1943 was the result of an accident which plaintiff suffered while tightening a cap on the bottom of a tank with a forty-eight inch Stillson wrench. The wrench slipped and plaintiff injured his back and, as a result of this injury, he was incapacitated for a period of not quite four weeks, and when he returned to work he was given a somewhat lighter job than he had held previous to the injury. *Page 204 
Dr. W. P. Bordelon testified that he examined the plaintiff on July 5, 1943, and again on the 15th and again on the 19th, and the last time on the 23rd day of July, and, on the 26th day of July, 1943, discharged him as able to return to work. He did not recommend him for hard manual labor and testified that on the 26th day of July he had an X-ray picture of his back in his possession as well as a report from the radiologist, Dr. C. C. McKinney. Dr. McKinney testified that the X-ray of plaintiff's back on July 9, 1943 "showed a slip of the fifth lumbar vertebra on the first segment of the sacrum, which I have recorded here as a first degree slip. That means about one centimeter." (Q) "That means he had spondylolisthesis?" (A) "Yes."
The plaintiff was also examined and X-rays made of his back by Dr. Stakely Hatchette, Dr. Charles V. Hatchette, Dr. Lucius DiGiglia, Dr. W. G. Fisher, Dr. G. E. Barham and Dr. P. M. Girard, and all of these doctors were unanimous in their opinion that the plaintiff Long had a grade-1 spondylolisthesis, which is a congenital condition and is not the result of injury or trauma. All of the medical testimony is to the effect that the plaintiff, in his present condition, was totally and permanently disabled in so far as hard manual labor was concerned, but none of them could find any difference in plaintiff's back condition as shown by the X-rays taken in 1943 and the X-rays taken in 1947. None of the doctors who testified as experts in this case were able to state that the plaintiff had any more disability on the day of the trial than he had subsequent to and as a result of his accident in 1943 except Dr. DiGiglia, who did testify that in his opinion the plaintiff was suffering more pain in 1947 than he was in 1943. The doctors were all unanimous in their opinion that plaintiff could gain no relief from his pain or congenital condition unless he submitted to a fusion operation, which, in effect, immobilizes the vertebra.
The testimony also shows that the plaintiff constantly suffered pain since the 1943 accident and kept with him and at home various kinds of medicine to alleviate these pains. There is in the record an offering by the defendant which is a written statement signed by the plaintiff on March 17th, 1947, in which the plaintiff describes his accident of July, 1943, in detail and stated, "suddenly I heard a 'pop' down low in my back and felt a sharp pain in the lower part of my back. For a minute I couldn't even let go of the wrench the pain was so great." He then details in the statement his examinations by Dr. Bordelon and that he was in bed and at that time X-rays were made and thereafter he was given work in the pump house "where the work is comparatively light" In this statement, plaintiff further states, "my back never did stop bothering me. Sometimes it would slack up for two or three months then it was start hurting badly again. Often during the past three years my wife had to put heating pads on my back and give me aspirin or BC powders so I would make a night or so that I could sleep." This statement was obtained, according to the testimony, in order to secure an operation for the plaintiff at the expense of the defendant company.
Mr. J. E. Fenex, who was superintendent for the defendant company testified that he had known the plaintiff ever since he first began to work for the company in 1942. He testified that when the plaintiff came to work for the company, he was recommended by the doctor for all kind of work "except hard manual labor." We find from the record, however, that certain duties performed by Long during his employment would be classed as hard manual labor. This witness testified also that the plaintiff was a "very good, conscientious worker," but that after the injury in 1943 his condition became progressively worse and to such an extent that in December of 1946 it became apparent to him that the plaintiff would no longer be able to do his work; that in February or March he decided, after consulting with plaintiff and his wife, that the plaintiff should be permanently disabled, and he sent him to Dr. Barham in December, 1946, in order to substantiate his recommendation to the health department of the defendant company. He did not receive approval until "I believe Mr. Long was in Dallas," and the record shows that the plaintiff was in Dallas in May, 1947, which, of course, was subsequent to the alleged accident, and *Page 205 
at that time was examined by Dr. Girard. This witness further testified that the plaintiff never did report to him or anybody else, as far as he knew, that he had a back injury on April 27, 1947. This witness testified that he tried to get the plaintiff to take the operation and that the company sent him, the plaintiff, to Alexandria for a preliminary examination for the proposed operation before the alleged injury on April 27, 1947. He testified that plaintiff did go to Alexandia for this examination, that he came back to Lake Charles, then went to Dallas to his own family doctor, returned to Lake Charles and left again. "He just didn't come back; he just left and didn't return. We carried him on the payroll for sixty days which we do all men that are off sick. Even myself, if I am off sixty days, I am automatically terminated." He further testified: "Q. Did you ever talk with him about him not being able to do his work? A. Yes, sir. Q. Just what was the substance of what you said about it? A. Well, Mr. Long himself complained to me that his back was becoming progressively worse and we agreed — I don't recall the exact conversation — we agreed that it was and that we must do something. Therefore, in December, '46 I decided to recommend to our health division and the management that he be totally and permanently disabled until he had his operation."
Warren Cox, who on April 27th, 1947 was doing laboratory work and also at that time performed first aid on those who received injuries, testified that the plaintiff came in on that date with a head injury. He also testified that the plaintiff was suffering pain because he told him that the pain was coming from his back. This is the only testimony in the record that the plaintiff complained of an injury or pain in his back on April 27th, 1947, the date of the alleged accident.
The defendant also offered the testimony of H. R. Wall, who was assistant superintendent of Continental Oil Company. This witness testified that the plaintiff's work was always satisfactory, however, he had talked with the plaintiff about his physical condition more than once and had recommended to the plaintiff that he should have an operation or do something about his condition. He recommended this to the plaintiff because of plaintiff's complaints. While this witness apparently disputes the fact that plaintiff had hard manual labor to do, he admits that plaintiff did do manual labor. This is immaterial in view of the medical testimony that anyone suffering from the congenital condition that the plaintiff had could injure his back merely by the ordinary, every-day movements of the body such as walking, sitting down, getting up, lifting any object when the back was in a certain position, in other words, with the condition the plaintiff had and the accident of July, 1943, it was only natural, as shown by the testimony, that he should suffer a great deal of pain in attempting to do his daily work. The X-rays taken in 1943, 1946 and 1947 show approximately one centimeter of displacement of the vertebrae. However, the doctors also testified that it would only take an infinitesimal movement of the vertebra to pinch the nerve and cause pain and that the X-ray would not necessarily show such a small displacement. Therefore, although they were of the opinion that there was no change in the condition of his back as shown by the X-rays of 1943, 1946 and 1947, it would be possible that he could have had such a slight additional displacement of the vertebra without the X-ray showing it.
Plaintiff testified that on April 27, 1947 he was in a stooping position working on a pump and that when he straightened up but while still in a bending position, he struck his head on an overhead valve stem which resulted in a cut approximately one-half to three-fourths of an inch in length. This accident was witnessed by a fellow employee, Leland Reeves, who corroborated the plaintiff in his testimony as to the accident and who also testified that Long did hard, manual labor during 1944, 1945, 1946 and part of 1947; that he worked with him and that he performed his labor satisfactorily, although periodically from plaintiff's accident of 1943 until his 1947 accident he had heard him frequently complain of his back.
Plaintiff, after receiving the injury, went to the First Aid Laboratory where *Page 206 
he was treated and, after twenty-five or thirty minutes there, he returned to his work. From the testimony, there is no doubt but that the plaintiff suffered quite a great deal of pain at times from 1943 to the date of his alleged accident on April 27, 1947, but that he must have done his work satisfactorily up until approximately December 1946.
We must take as true plaintiff's statement of March 17th, 1947 as well as the Superintendent's testimony. Certainly no such statement would have been prepared and signed by the plaintiff unless he had previously discussed the matter with his superintendent and had decided that his back condition was too bad for him to continue his work, and that an operation was the only means which might give him relief, and also that his disability dated from the accident of 1943.
Plaintiff testified that prior to his accident in April, 1947, that his back did not bother him all the time. "There were intervals there when it didn't bother me at all. But now it hurts everytime I move my hips." Plaintiff also testified that he was willing to submit to an operation if the defendants would have given it to him, and he was asked the following question: "Q. But they refused to pay for your expenses for an operation? A. They wouldn't guarantee to pay for it, no, sir." On cross-examination plaintiff, when questioned about his statement that the company would not guarantee the expenses of an operation, when asked if they wanted plaintiff to pay for it, answered: "No, sir, they didn't say that. They said they imagined they would pay for it." The testimony is sufficient for us to conclude that the defendant company had agreed to pay for this operation and that the plaintiff knew that they would pay for it and this was not his real reason for not accepting the operation.
There is no denial by plaintiff that he suffered with his back during his employment from the year 1943 to the year 1947. The only difference, he states, is that after his accident, April 27th, 1947 his back hurt all the time. He did not complete his day's work on that date and also came back and worked the next night, which would be April 28th. He had his regular two days off and then returned to work for another day without complaint.
While plaintiff stated that as a result of his accident of April 27th, 1947 he had the worst pain in his back that he had ever suffered, yet he did not tell Reeves, his co-employee who witnessed the accident, of any pain to his back. The record shows that he only told Cox, the first aid man, that his back was paining him.
Dr. Girard was asked under cross-interrogatory the following question: "Q. If your diagnosis of the plaintiff's condition is based in whole or in part upon any history which the plaintiff gave you, please state in detail what that history was. A. The patient stated that he was pulling on a pipe wrench when he felt a sudden pop in his back. He had very severe pain in low back region. He stayed in bed for six weeks with his back taped. Pain has been steady ever since but in the last 8 months it has been especially bad. He stated that he got attacks very suddenly and very severe; had lost 20 pounds in weight; had no previous injury that he knows of; coughing or sneezing causes pain in the back; he receives occasional relief from drawing up of the legs and also rest in bed helps him at some time."
It is quite strange that plaintiff told Dr. Girard, which was on May 8, 1947, about ten days after his alleged accident, only about his accident in July, 1943. It doesn't seem reasonable that this doctor could possibly have forgotten the history of such a recent injury had it been told to him. It leads us to believe that as late as May 8, 1947 Long considered the seat of his trouble to date from the accident of July, 1943 rather than the accident of April 27, 1947.
Mrs. Long stated that her husband had never suffered with his back that she knew of until he got hurt in July, 1943; that subsequent to July, 1943, and prior to April, 1947, he suffered pain "but nothing compared to what he has had *Page 207 
since he got hurt in 1947." She had given him hot baths and administered aspirins and BC tablets quite a number of times as a result of his injury in July, 1943 and prior to the injury of April, 1947. She also "rubbed him religiously, sometimes for hours to start the circulation." She testified that her husband worked regularly and she is borne out in this by the record. He was only off one day on account of his back prior to the accident of April, 1947. She described her husband's condition when he got home after the accident of April, 1947 by stating "that he was as white as a sheet and appeared to be suffering very much and that he could hardly straighten up;" that she immediately got him to bed, took his shoes off for him and that she had never had to do that prior to April, 1947; that she gave him the same treatment after his accident in April, 1947, as for the one of July, 1943 but on "a greater scale." She also testified that her husband tossed and tumbled practically every night and "sometimes he doesn't rest at all." Mrs. Long testified that she discussed with the defendant company the necessity of an operation on her husband's back prior to his accident of April 27, 1947, and that while the company did not refuse to pay for it, that it would not put in writing "statements that they would guarantee us the full obligation."
The judge of the lower court seemed to base his judgment largely upon the testimony of the plaintiff and on the testimony of his wife and the plaintiff's history. He found that the plaintiff was not incapacitated because of his back after he recovered from the injury of 1943, at least until December, 1946 as shown by plaintiff's own statement of March 17, 1947, whereas, according to the plaintiff and his wife, on the date of the trial he was continuously suffering pain since the injury of April 27, 1947 to such an extent that he was unable to perform any manual labor.
As we see the case at the present time, we have one in which the plaintiff suffered a back injury in 1939 and again in 1943, and that from 1943 he suffered pain and the condition of his back apparently became progressively worse, although he did perform his duties which consisted of manual labor. The condition of his back and the pain became so acute according to the statement signed by plaintiff on March 17th, 1947, that he agreed to an operation on his back and the company agreed to furnish this operation. Plaintiff practically admits in his statement that his back condition progressed to such an extent that the pain was constant and evidently, he himself felt that he could not continue to do the work.
In addition, we have a case in which all the medical testimony is to the effect that there is no difference in the X-ray pictures of plaintiff's back taken in 1943, 1946 and 1947, and not one of the doctors could testify that there was any change in the condition of plaintiff's back. Further, plaintiff did not state to anyone except Cox that he had hurt his back on April 27, 1947, and his statement to Cox, first aid man, was not that he had hurt his back but that his back was hurting him, and this was not unusual as plaintiff's back pained him constantly prior to his 1947 accident. The record shows that he had often told people of this pain in his back subsequent to 1943 and prior to 1947. Therefore, this does not in any way corroborate or add anything to the plaintiff's testimony that he had injured his back as well as his head on April 27, 1947. Also, he failed to tell Dr. Girard on May 8, 1947 of his alleged accident only ten days prior thereto on April 27, 1947 and, instead, attributed his disability to his accident of 1943.
We are lead to the inevitable conclusion that the preponderance of the evidence, as well as plaintiff's history, proves that his disability was the result of his accident of July, 1943 rather than his accident of April, 1947, nor has plaintiff proven an aggravation of his back condition as a result of his 1947 accident. Plaintiff's testimony that he had injured his back or aggravated his back condition as well as cut his head on April 27th, 1947, and the testimony of his wife that he suffered more intense pain subsequent to his 1947 accident stand alone and cannot overcome the preponderance of the testimony and his history to the effect that his disability was due entirely to his accident in 1943 and, having filed this suit on July 30th, 1947, the plea of prescription *Page 208 
as to any cause of action based upon the accident of 1943 must be sustained, and the plaintiff having failed to prove that his back was injured or his previous back condition aggravated by the accident of April 27th, 1947, the judgment of the District Court must be reversed.
It is therefore ordered that there be judgment in favor of the defendants, dismissing plaintiff's suit at his cost.